IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ORLANDO MARTIN,

    Plaintiff,                    Case No. 2:04-cv-02360 ALA (P)

    vs.

JAMES E. TILTON, et al.,

    Defendants.             <u>ORDER</u>

_____/

    Plaintiff Orlando Martin is a state prisoner proceeding *pro se* and *in forma pauperis* with an action filed pursuant to 42 U.S.C. § 1983. On February 20, 2007, Mr. Martin filed an amended complaint against Defendants Alameida, Carey, Holiday, Obedoza, Stocker, Thor and Traquina for deliberate indifference to his serious medical needs in violation of his Eighth Amendment constitutional rights.[1] The gravamen of Martin's complaint is that Defendants ignored his serious medical needs by failing to provide him with a double mattress.

    On July 2, 2008, Defendants Alameida, Carey, Stocker, Traquina and Thor filed a motion for summary judgment on the ground that there is no dispute of material fact and they are

---

[1] Defendants Holiday and Obedoza were dismissed on May 19, 2008. (Doc. 92). Dr. Greenough, Chief Physician and Surgeon, was named in Martin's amended complaint but has never been served. (Mem. of P & A. in Supp. of Mot. for Summ. J. at page 5:13).

1

entitled to judgment as a matter of law. Additionally, Defendants Alameida, Carey and Stocker maintain that they are entitled to summary judgment because their actions did not cause Martin's alleged injuries. Martin has filed a timely opposition to the motion; Defendants have replied. For the reasons set forth below, the motion for summary judgment is granted.

# I

Summary judgment is appropriate where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In opposing summary judgment, a nonmoving party must "go beyond the pleadings and, by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)). "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted).

Where the party resisting a motion for summary judgment is *pro se*, the court "must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (holding that allegations contained in a pro se plaintiff's verified pleadings must be considered as evidence for purposes of summary judgment). The opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. *T.W.Elec. Serv., Inc. v. Pacific Elec. Contrators Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

## II

### A

### Undisputed Facts

Martin was received into the Department of Corrections and Rehabilitation on April 24, 2000. Defendant's Undisputed Facts (DUF) ¶ 1. He was transferred to Salinas Valley State Prison (SVSP) on November 20, 2000. *Id.* On February 25, 2002, a medical order was issued by Dr. Andrew Wong, Staff Physician at SVSP, stating that Martin was to be issued an extra mattress for a period of one year. Am. Compl., Ex. B; DUF ¶ 2. That same day, the order was approved by Dr. Daniel Thor, Chief Physician and Surgeon at CSP-Solano. Am. Compl. ¶ 25; Ans. 2:12-14. Martin was transferred to California State Prison - Solano (CSP-Solano) on July 18, 2002. DUF ¶ 1. Martin's "formal request to have his double mattress chrono honored and renewed by medical staff upon his transfer to CSP-Solano was denied" at CSP-Solano. Am. Compl. ¶ 35; DUF ¶ 3.

On May 15, 2003, Martin submitted an administrative appeal claiming that the "medical doctors [at CSP-Solano] have acted with deliberate indifference and a reckless disregard for [his] medical condition" by refusing to "renew" his medical order for a double mattress. Am. Compl. ¶ 35, Ex. C. at 2; Ans. at 2:24-25.

CSP-Solano's policy, implemented in 1999 by Dr. Greenough, the Chief Physician and Surgeon at that time, only allows double mattresses for "Grade 1 or higher level pressure sores, complications of pressure sores, and related conditions." Am. Compl., Ex. C at 11; DUF ¶ 3.

Defendant Traquina reissued the policy on May 10, 2005.[2]  DUF ¶ 4.

Martin pursued his administrative appeal to the "First Level Appeal." Am. Compl. ¶ 41, Ex. C at 8. On July 9, 2003, Dr. S. O. Obedoza, the physician who interviewed and responded to Mr. Martin's administrative review, denied Mr. Martin's request for the "renewal of a double mattress chrono." *Id.*; *see also* Ans. at 2:26. Dr. Obedoza explained

> Results of the inquiry revealed although you previously had a double mattress chrono while at Salinas Valley State Prison during the year of 2002, your request for a double mattress chrono is denied. As explained to you, double mattress chronos are only issued to those with Grade 1 or higher level pressure sores . . . your condition did not meet the criteria.

Am. Compl., Ex. C at 8. Martin's administrative appeals were denied at all levels. Ans. at 2:26.

Regulations of the Department of Corrections and Rehabilitation provide that medical services for inmates will be provided only based on medical necessity and if the treatment is supported by outcome data as effective medical care. DUF ¶ 6. Only facility-employed health care staff may, within the scope of their license, diagnose illnesses, prescribe medications and health care treatments for inmates. DUF ¶ 7. There is no clinical evidence presented demonstrating that a firm mattress worsens spinal conditions. DUF ¶ 10.

Martin has a twenty-year history of complaints of lower back pain. DUF ¶ 11. He has also complained of neck pain over the last few years. *Id.* Martin has received conservative

---

[2] Martin "disputes that CSP Solano had a policy of issuing second mattresses only to inmates with pressure sores, or conditions likely to lead to pressure sores." DUF ¶ 3; Pl.'s Disputed Facts in Opp'n to Def.'s Summ. J. at 1:18-22. In his amended complaint, however, Martin submitted a copy of CSP-Solano's original "Mattress Chrono" policy, issued by Dr. Greenough in 1999. It states, in part, "[t]he only medical condition for which a supplemental mattress will be authorized are Grade 1 or higher level pressure sores, complications of pressure sores, and related conditions." Am. Comp., Ex. C at 11. Therefore, this fact is not in dispute. *See Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001)("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts").

1  treatment for his chronic pain, including the prescription of pain medications.[3] DUF ¶ 12. In

2  1991, Martin had a laminectomy, and spinal fusion at the level of L5-S1. DUF ¶ 13. L5 is the

3  lowest lumbar vertebrae, and S1 is the highest part of the pelvis. *Id.* A laminectomy is the

4  removal of part of vertebrae known as the lamina. *Id.* A spinal fusion is the implanting of bone

5  to fuse two vertebrae together. *Id.* An MRI on Martin's spine was performed in March 2006,

6  which revealed a disc bulge at L4-L5 and L5-S1. DUF ¶ 14. An MRI done in November 2007,

7  did not show the same pathology. *Id.* Both the 2006 and the 2007 MRIs showed no significant

8  spinal stenosis or neural foraminal narrowing, which are conditions that can lead to nerve

9  impingement. DUF ¶ 15. Spinal stenosis is a condition where bone spurs grow into the spinal

10 canal and pinch the spinal cord. *Id.* The foraminal canals are the openings where nerves exit the

11 spine. *Id.* Narrowing of these spaces can pinch the exiting nerves. *Id.*

12        Cervical X-rays done in July 2006 and January 2007 show moderate degenerative disc

13 disease at the level of C6-C-7. DUF ¶ 17. The vertebrae are composed partially of cartilage,

14 which is subject to wear and tear over time, which is known as degenerative changes. *Id.*

15 Martin's has received conservative pain management, including prescription pain medication.

16 *Id.*

17        When an inmate has a medical condition that could effect his or her performance on the

18 job, medical staff are responsible for diagnosing the condition and establishing work limitations.

19 DUF ¶ 18. For example, an inmate with a mobility impairment would be issued a medical

20 chrono indicating that the inmate should be assigned to a job with no prolonged standing or

21 walking. Martin has been issued medical orders identifying the following limitations: 1) no

---

[3] Martin "disputes that his condition has been continuously monitored." DUF ¶ 11; Pl.'s Disputed Facts in Opp'n to Def.'s Summ. J. at 1:18-22. In his amended complaint, however, Martin not only states that he "has been prescribed various pain medications and intravenous injections for extreme pain caused by his medical conditions..." but he also submits evidence of two x-rays performed in 2006, a medical chart that indicates at least five doctors visits since his arrival at CSP-Solano, and two medical chronos related to his back condition. Am. Comp., Ex. D; Ex. E. Thus, it does not appear that this fact is in dispute. *See Block*, 253 F.3d at 419.

prolonged standing or walking more than thirty minutes; 2) no lifting greater than ten pounds; 3) no pushing, pulling, twisting, or mopping; and 4) no repetitive stooping, bending or squatting. DUF ¶ 19.[4]  The designation of A-2 credit earning, denotes an inmate that is on a waiting list for an assignment.  DUF ¶ 20.

      Defendant Almeida was the Director of the Department of Corrections at the times alleged in the complaint. Am. Comp. ¶ 3; Ans. at 2:3-4; Defendant Carey was the Warden of CSP-Solano at the times alleged in the complaint. Am. Comp. ¶ 11; Ans. at 2:7-8.  Defendant Stocker was employed by the Department of Corrections as an appeals examiner at the times alleged in the complaint.  Am. Comp. ¶ 7; Ans. at 2:6.  Defendant Traquina was employed by CSP-Solano, as the Chief Medical Officer at the times alleged in the complaint.  Am. Comp. ¶ 18; Ans. at 2:10-12.  Defendant Thor was employed as the Chief Physician and Surgeon at CSP-Solano at the times alleged in the complaint. Am. Comp. ¶ 25; Ans. at 2:13-14.

## B

### Disputed Facts

      In his opposition to Defendants' motion for summary judgment, Martin "disputes that there is no evidence that his spinal condition has worsened as a result of having one mattress rather than two." DUF ¶ 10; Pl.'s Disputed Facts in Opp'n to Def.'s Summ. J. at 2:12-16.  Martin contends that his "medical condition has worsened . . . as a result of Defendants refusal to honor and renew his previously prescribed double mattress chrono." Am. Comp. ¶ 60.  In support of this contention, Martin submitted a declaration and copies of documents purported to be Martin's medical records, including radiology reports dated:  November 21, 2003 (comparing condition of spine to a radiology report of July 13, 2001); March 9, 2006; July 18, 2006; and January 4, 2007.  Pl.'s Decl. in Supp. of Opp'n to Def.'s Summ. J. at ¶ 11, and at Ex. C. Defendants contend that Plaintiff's declaration and supporting documents are inadmissible

---

[4] Martin also presents a chrono, with an illegible date, that includes a limitation on "prolonged standing/walking/longer than 30 min. at a time." Am. Compl., Ex. E. at 6.

because "[n]one of the documents attached as Exhibit C reference Plaintiff's mattress or the cause of Plaintiff's pain [and that Plaintiff is not qualified] to read and interpret the medical records attached to Exhibit C." Def.'s Objections to Evidence Proffered by Pl. in Supp. of his Opp'n to Mot. for Summ. J. at 3:1-6.

The radiology reports do not specifically mention the 'cause' of Martin's pain, or the effect a double mattress would or would not have on Martin's condition. The radiology reports do, however, consistently state that Martin suffers from "spinal injury increasing pain," "degenerative changes in the lower lumbar spine," "disc bulging," "degenerative disc disease," "chronic neck pain," and "moderate degenerative changes."[5] Pl.'s Decl. in Supp. of Opp'n to Def.'s Summ. J. at ¶ 11, and at Ex. C. It appears that the issue of whether there is evidence that Martin's spinal condition has worsened as a result of having one mattress rather than two is a material fact. For purposes of summary judgment, however, a dispute as to a material fact is only "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because the evidence does not support a verdict for Martin, as discussed below, the dispute over the cause of Martin's pain, or whether his medical condition has worsened due to the denial of a second mattress, is not sufficient to create a triable issue of fact for a jury.

Martin disputes three additional facts included in Defendants' statement of undisputed facts. He disputes that: "medical staff are not authorized to issue orders for the replacement of old, worn out or contaminated mattresses" DUF ¶ 5; "the double mattress policy at CSP-Solano is supported by current literature published in Lancet" DUF ¶ 8; and, "because of the solid

---

[5]The Court wonders why the prison ombudsman was not called upon or effective in resolving this dispute. An inmate who is in his fifties, with a medical history that includes spinal surgery, degenerative disc disease, and increasing spinal pain has spent over four years litigating this issue against the State of California, at enormous expense to both state and federal tax payers, in an attempt to acquire a second mattress. An ombudsman might well have settled this dispute years ago without the resultant expenditure of thousands of dollars of tax payers' earnings.

7

1  construction of cell bunks, using one mattress is considered equal to a very firm mattress and
2  two mattresses would be equal to a medium-firm mattress." DUF ¶ 9; Pl.'s Disputed Facts in
3  Opp'n to Def.'s Summ. J. at 1:23-27.  While it appears from the exhibits provided by Martin that
4  medical staff are indeed authorized to, and do issue orders for mattress where medically
5  necessary, none of these disputes raises a triable issue of fact because, as set forth below, none
6  are material to the question whether the Defendants were "deliberately indifferent" to Plaintiff's
7  serious medical needs.

### III

Defendants Almeida, Carey and Stocker maintain that they are entitled to summary judgment because their actions did not cause Martin's alleged injuries. Mem. of P. & A. in Supp. of Mot. for Summ. J. at 7:2-3.  In opposition, Mr. Martin argues that "each defendant possessed decision making powers and was responsible for the proper training and supervision of subordinates." Am. Compl. at 9.

To state a claim under section 1983, a plaintiff must allege that: (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006).  "A person deprives another of a constitutional right, where that person does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir.2007) (quotations omitted). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1991)).

Under 42 U.S.C. § 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. *Taylor v. List*, 880 F.2d 1040,

1045 (9th Cir. 1989). When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. Further, "supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is the 'moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Redman v. County of San Diego*, 942 F.2d 1435, 1448 (9th Cir. 1991) (en banc) (quoting *Johnson,* 588 F.2d at 743-44). Thus, "[i]n order to be a 'moving force' behind [a plaintiff's] injury, we must find that the 'identified deficiency' in the [prison's] policies is 'closely related to the ultimate injury.'" *Gibson v. County of Washoe*, 290 F.3d 1175, 1196 (9th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 103 (1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. *See Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 168 (1993).

### A

Martin alleges that Defendant Almeida, as Director of the CDC, Defendant Carey, as Warden of CSP-Solano, and Defendant Stocker, as an appeals examiner employed by the CDC, failed to act in their supervisory capacity to prevent the alleged constitutional violations.[6] The

---

[6]Martin alleges in his amended complaint that these defendants were responsible for promulgating, supervising the promulgation of,

9

allegations against Defendants Almeida, Carey, and Stocker are general in nature and largely mirror each other.

---

> implementing supervising the implementation of monitoring compliance with supervising the monitoring compliance with enforcing and/or supervising the enforcement of policies affecting the medical care of all inmates within the CDC, including responsibility for assuring that all inmates within the CDC receive the medical care consistent with community standards, the standard of care imposed under law of the state of California upon healthcare providers licensed to practice in California. Am. Comp. ¶¶ 4, 12.
>
> had line authority over all employees and was responsible for the training and supervision of subordinate personnel and health care providers with whom the CDC contracts to provide medical care, diagnosis and treatment for all inmates within the CDC and CSP Solano. Am. Comp. ¶¶ 5, 13.
>
> had the responsibility, authority an duty to correct on 602 appeals and occurring constitutional violations, ADA violations, or any other improper conduct committed by subordinates. At all times mentioned Defendant Edward Almeida was acting under color of state law, in the course and scope of his employment, and is sued herein in his individual capacity. Am. Comp. ¶¶ 6, 14.
>
> acquiesced in a policy and/or custom to deny Plaintiff's 602 Appeal at the director's level. . . acquiesced in "falsely' alleging that Plaintiff's "only" argument is that doctor's refused to renew his double mattress chrono. . . acquiesced in a discriminatory policy to reject his disability, proof of disability and refused to honor and renew double mattress chrono previously authorized by Dr. Wong and Defendant Dr. Daniel Thor in violation of the ADA, Armstrong v. Wilson and the Due Process and Equal Protection Rights of the 5th and 14th Amendments of the U.S. Constitution. Am. Comp. ¶ 54-55.
>
> acquiesced in a CSP-Solano mattress chorno policy with each defendant herein, that is neither followed or enforced, because, Defendants, Dr. Alvaro Traquina and Dr. William Greenough on May 19, 2001 and October 14, 2003 authorized double mattress chronos for CSP Solano inmates, Jones and Toloy, Thomas. Am. Comp. ¶ 56.
>
> failed to properly train and supervise subordinate Defendants . . . to perform their job duties consistent within the scope and practices of the duty statements setting forth the job titles, duties and responsibilities for appeals examiner medical appeals analyst and physician. Am. Comp. ¶ 57.
>
> participated in and acquiesced in a policy and conspiracy with each defendant named herein to intentionally and deliberately interfere with and deny Plaintiff access to receive continuous medical care and treatment for his medial condition and serious medical needs for the sole purpose of inflicting pain and suffering. Am. Comp. ¶ 58.

Martin alleges that these defendants were responsible for "supervising the enforcement of policies affecting the medical care of all inmates within the CDC" and that they "failed to properly train and supervise subordinate Defendants . . . to perform their job duties." *See e.g.*, Am. Comp. ¶¶ 3, 57. An allegation that a defendant did not properly train or supervise a subordinate, where there is no allegation that the supervisor was personally involved in the alleged deprivation of the right, is not sufficient to establish liability under 42 U.S.C. ¶ 1983. *Hansen*, 885 F.2d at 645-46.

The only allegation in the amended complaint alleging that these Defendants had "direct participation" in the alleged constitutional injury is Martin's contention that his administrative appeal was improperly handled by all Defendants, including Almeida, Carey and Stocker, who "had the responsibility, authority and duty to correct on 602 appeals and occurring constitutional violations, ADA violations, or any other improper conduct committed by subordinates."[7] Am. Comp. ¶¶ 6, 14. Martin alleges that "each defendant had actual and direct participation in the constitutional violation" because "each defendant was informed through 602 appeal of the constitutional violation" and that "each defendant was 'vested' with the powers necessary to deny [or grant] Plaintiff's 602 appeal." Am. Comp. ¶ 70. Allegations regarding the handling of Martin's administrative appeal, however, do not state a claim under section 1983 because the denial of a grievance does not in and of itself rise to the level of a constitutional violation. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding

---

[7]Martin has not stated a claim under Title II of the ADA. To state such a claim, a plaintiff must allege:(1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. Nev. 2007) citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).

that there is no liberty interest entitling inmates to a specific grievance process). Therefore, to the extent Martin asserts that Defendants Almeida, Carey and Stocker are liable because they participated in the handling of his inmate grievances, he cannot state a claim upon which relief can be granted.

The allegation that Almeida, Carey and Stocker "acquiesced in a policy and conspiracy with each defendant named [in the complaint] to intentionally and deliberately interfere with and deny Plaintiff access to receive continuous medical care and treatment for his medial condition and serious medical needs for the sole purpose of inflicting pain and suffering" is not supported by any specific allegations or evidence as to these Defendants' personal participation or actions. As discussed below, because Martin has failed to show that any prison officials were deliberately indifferent to his serious medical needs, the conspiracy allegation is insufficient to withstand a motion for summary judgment. Am. Comp. ¶¶ 53, 58; *Hansen*, 885 F.2d at 646; *see also Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citation omitted) (holding that a "conspiracy allegation does not give rise to § 1983 liability unless there is an actual deprivation of civil rights").

None of the allegations against Defendants Almeida, Carey and Stocker are sufficient to withstand summary judgment because "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability" under 42 U.S.C. § 1983. *Hansen*, 885 F.2d at 645-46. Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Taylor,* 880 F.2d at 1045. Other than alleging Defendants were personally involved in the 602 appeal process of his administrative appeals, Martin has not alleged that Alemida, Carey or Stocker personally participated in the alleged constitutional injury, or that these Defendants otherwise knew of the alleged violations and failed to act to prevent them. Nor has Martin specifically alleged that Almeida, Carey or Stocker "set[] in motion a series of acts by others which [any of the Defendants knew] or reasonably should know would cause others to inflict the constitutional injury," so as to be a "moving force" of the constitutional violation.

1  *Redman*, 942 F.2d 1448; *Hansen*, 885 F.2d at 646; *Taylor*, 880 F.2d at 1045.

2  Thus, Martin has not alleged a causal link between Almeida, Carey or Stocker and the alleged constitutional injury. Because Martin has failed to establish a genuine issue of material fact as to the personal involvement of any of these Defendants in the alleged injury, Almeida, Carey and Stocker are entitled to summary judgment as to all claims brought against them.

## II

Defendants Traquina and Thor contend that they are entitled to summary judgement because Martin's dispute is over "the kind of treatment he has been prescribed, which does not constitute deliberate indifference" to his serious medical needs. Mem. of P. & A. in Supp. of Mot. for Summ. J. at page 6:17-18. Martin argues, in opposition, that he is entitled to injunctive, monetary and declaratory relief because, under *Hamilton v. Endell*, 981 F.2d 1062 (9th Cir. 1992), "there may be a claim where 'prison officials and doctors deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner.'" Am. Compl. at 27; Pl.'s Mem of P. & A. in Opp. to Summ. J. at 4.

"Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). However, "not every breach of that duty is of constitutional proportions." *Id.* To establish a claim that inadequate medical care constitutes cruel and unusual punishment, the mistreatment must rise to the level of "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "'Prison officials are indifferent to prisoners' serious medical needs when they deny, delay, or intentionally interfere with medical treatment . . . .'" *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted). The prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer v. Brennan*, 511

U.S. 825, 834 (1994). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.*

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Further, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

## A

Martin's allegations against Defendants Thor and Traquina are the same as those made against Defendants Almeida, Carey and Stocker. See Am. Comp. ¶¶ 42-51. In addition, Martin alleges that Defendants Thor and Traquina were responsible for promulgating, supervising, monitoring and enforcing "policies affecting the medical care of all inmates at CSP-Solano." Am. Compl. ¶¶ 18, 25. Martin alleges that Defendants

> had the responsibility and duty to assure that Plaintiff/Inmates who are transferred from other institutions to CSP-Solano receive continuing proper medical care, diagnosis and treatment including, but not limited to, having the authority responsibility and duty to assure that Plaintiff's/Inmates previous treating physicians, Dr. Andrew Wong and Dr. Daniel Thor's orders and prescription in the form of a medical chrono for double mattresses for serious medical needs are honored for continuous medical care.

Am. Comp. ¶ 31.

Martin relies on *Hamilton* to establish his claim of deliberate indifference. In *Hamilton*, the prisoner's prior treating surgeon wrote a letter to prison officials stating that the prisoner could not travel by air to be transferred to another prison because of recent ear surgery. Another doctor, who had not physically examined the prisoner, wrote a letter that he believed that the "*normal* procedure following the operation . . . would be to allow the patient to fly." *Id.* at 1067 (emphasis in original). Relying on the second doctor's letter, the prison officials ordered the prisoner to be transferred to another prison via plane. The plane trip allegedly caused the prisoner ear damage. In upholding the district court's decision to deny the prison officials' claim for qualified immunity on summary judgment, the Ninth Circuit explained:

> The prison officials forced Hamilton to fly in contravention of his treating physician's specific orders and in total disregard for Hamilton's past experience with ear pain and injury when flying. By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the "unnecessary and wanton infliction of pain."

*Id.* (internal citations omitted).

The instant case is distinguishable from *Hamilton*. Martin's prior treating physician ordered that Martin have a double mattress for one year. That order expired on February 25, 2003. On May 24, 2003, Dr. Holiday, a physician at CSP-Solano, diagnosed Martin's medical condition and determined that under the policy in place at CSP-Solano, the medical order for a double mattress should not be renewed. Am. Compl. at ¶ 37. Unlike in *Hamilton*, the prison's medical staff did not approve decisions that were in "contravention of [Martin's] treating physician's specific orders." *Hamilton*, 981 F.2d at 1067. The facts in this case are analogous to those in *Sanchez,* where the court concluded that Plaintiff-inmate Sanchez had received adequate medical treatment and medication for his ailments, and that at most, Plaintiff had alleged that there was a difference of opinion regarding his treatment. *Sanchez*, 891 F.2d at 242. Martin disagrees with the treatment prescribed by his prisoner doctors. Mere disagreement with diagnosis or treatment, however, does not support a claim of deliberate indifference. *Id.*

**B**

Martin contends that the CSP-Solano policy for issuing double mattresses "is neither followed or enforced, because," other prison doctors, including Dr. Traquina, have "approved a medical chrono for double mattresses for [other] inmates] for back pain. *Id.* at ¶ 37. In the amended complaint, Martin has submitted a copy of CSP-Solano's policy, first issued in 1999, and renewed in 2005 by Traquina, which states that authorization of double mattresses is limited to specific medical conditions that give rise to "pressure sores." Am. Compl., Ex. C at 11. Martin contends that it is a "falsehood" that double mattresses are not authorized for medical conditions other than those listed in the CSP-Solano policy. Am. Comp. ¶ 56. To support this contention, Martin has submitted documents which he states are medical orders issued for inmates Jones and Toloy. Am. Compl., Ex. C at 12, 13. Martin alleges that his "medical condition and medical needs are no less serious than inmates Jones; Toloy, Thomas or any other inmate requiring medical appliances." Am. Comp. ¶ 48. Martin has failed to set forth any supported allegations, however, that inmates Jones and Toloy, who allegedly received double mattresses for back pain, do not also meet the 1999 CSP-Solano policy criteria. Am. Compl., Ex. C at 12, 13. The medical order for inmate Jones indicates that Dr. Greenough requested braces for Jones's knee, back and neck, ordered that he be placed on a lower bunk, on a lower tier, and be given a cane and a double mattress. Am. Compl., Ex. C at 12. The medical information for inmate Toloy, indicates that Dr. Traquina requested a double mattress for Toloy who had undergone "back surgery x 2 with lumbar rods and screws." Am. Compl., Ex. C at 12. Since Martin does not contend that these inmates do not meet the CSP-Solano double mattress policy criteria, there is no genuine issue of material fact in dispute with respect to the uniformity of the prison's enforcement of its own policy.

Martin relies on *Ware v. Jackson County*, 150 F.3d 873 (8th Cir. 1998), for the proposition that if a prison policy is not strictly followed, it cannot be enforced at all. *Ware* does not support Martin's contention. The court in *Ware* found that the evidence sufficiently

supported the finding of a causal link between the county's conduct and inmate's injury where the "inevitable result" of the departmental director's failure to address meaningfully the correction officer's record of sexual assault, extortion, and deception was the continuation of the sexual misconduct within the prison. *Id.* at 881-82. Such a holding is inapposite to Martin's claim.

Martin has failed to allege that the Defendants knew of and disregarded excessive risk to his health. Even assuming that his neck and back pain rise to the level of a sufficiently serious medical need, there is no evidence that Defendants deliberately denied Martin treatment. Throughout Martin's incarceration at CSP-Solano, he has received continuous evaluation and treatment for his back and neck pain, including two MRIs, two cervical X-rays and prescription pain medication. Martin provides no supported allegation or medical evidence that his condition was made worse as a result of having only one mattress. Martin disagrees with the prison medical staff's determination of the correct course of treatment. The Ninth Circuit has repeatedly held that a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under §1983. *See, e.g.*, *Sanchez*, 891 F.2d at 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to Sanchez' serious medical needs"); *Shields v. Kunkel*, 442 F.2d 409, 410 (9th Cir. 1971) ("A difference of opinion between patient and physician without more, does not state a claim under section 1983"); *Mayfield v. Craven*, 433 F.2d 873 (9th Cir. 1970) ("a difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under the Act"); *McKinney v. People of State of Cal.*, 427 F.2d 160 (9th Cir. 1970).

Therefore, Martin has failed to demonstrate that any of the Defendants were deliberately indifferent to his medical needs. *Farmer, 511 U.S. at 837; see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (holding that deliberate indifference cannot be shown where there is

merely a disagreement about the course of medical treatment that should be provided).[8]

### C

Last, Defendants maintain that they are entitled to summary judgement on "Plaintiff's allegations that he has been harassed or punished for failing to perform work or participate in program activities" because he "has not alleged that Defendants failed to consider his physical limitations in proposed assignments, or even that he was actually incapable of performing the tasks required by any particular assignment that he was offered." Mem. of P. & A. in Supp. of Mot. for Summ. J. at 8:9-11, 8:27-28, 9:1.[9]

---

[8] The only issue before Dr. Holiday and Dr. Obedoza on administrative appeal was whether Martin's treating physicians at CSP-Solano erred in not "*renew[ing]*" his medical order for a double mattress. Am. Compl., Ex. C (emphasis added). In his administrative appeal, Martin did not argue that his treating physicians at CSP-Solano ignored the medical order from July 18, 2002, the date he was transferred to CSP-Solano, to February 25, 2003, the date the medical order expired. *See, e.g., Hamilton*, 981 F.2d at 1066 (holding that there may be a claim where "prison officials and doctors deliberately ignore[] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner").

[9] Martin alleges that

> As a further direct and proximate result of all Defendants actions, Plaintiff is assigned to (A-2) work group, involuntarily. Unassigned and placed on a waiting list for work, GED School or other prison support program [sic] that squarely conflicts with Plaintiff's mental and physical disabilities as a qualified disabled person.
>
> As a further direct and proximate result of all of Defendants actions Plaintiff has been and continues to be subjected to harassment and adverse punishment for failing to perform work, GED School, or any other prison support program, because of his disabilities.
> ...
>
> Plaintiff further alleges that Defendants have discriminated against him by reason of his disability.
>
> As a direct and proximate result of Defendants cumulative actions Plaintiff has suffered and continues to suffer severe physical mental and emotional pain and distresses.

Am. Comp. ¶¶ 67-68, 71-72. Martin summarized his claim in his opposition to the Defendants' motion for summary judgment as follows

> As a direct and proximate result of defendants actions plaintiff suffers cruel and

Martin alleges that Defendants have discriminated against him in assigning him to an A-2 work group involuntarily, which placed him on "a waiting list for work, GED school or other prison support program that squarely conflicts with Plaintiff's mental and physical capabilities." Am. Comp. ¶ 67. Martin contends that his "limitations include, but not limited to, 1) No prolonged standing or walking more than 30 minutes 2) No lifting greater than 10 lbs. 3) No pushing, pulling, twisting, or mopping 4) No repetitive stooping, bending or squatting and 5) No prolonged sitting." Pl's Mem. of P. & A. in Opp'n to Summ. J. at page 12:13-19. According to Martin, he already has a GED, and Defendants' failure to provide him with a different work or vocational assignment, combined with their refusal to provide him with a double mattress, constitutes cruel and unusual punishment under the Eighth Amendment. Am. Comp. ¶ 81; Pl's Mem. of P. & A. in Opp'n to Summ. J. at page 12:21-13:6.

Martin has not alleged, nor has he presented any evidence, that Defendants failed to consider his physical limitations in assigning him to the A-2 work group or failed to accommodate for them during his assignments. Martin has also not alleged, or presented any evidence that he is actually incapable of performing the tasks required. Under California law, all inmates who are capable must work and only inmates who perform in a work, educational or vocational program receive full work credits. *See* Cal. Pen. Code § 2933 (credit is granted only for participation in approved work, training, or education programs, and is not granted for mere good behavior).

The Eighth Amendment establishes limits on the conditions that states may impose on prisoners. *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 846 (9th Cir. 1985) (citing *Rhodes v. Chapman*, 452 U.S. 337, 344-45(1981)). Prison conditions must not be "'grossly

---

unusual punishment in the form of extreme neck, spinal and back pain exacerbated by being forced to sit in a school for seven hours Monday-Friday.

Pl's Mem. of P. & A. in Opp'n to Summ. J. at page 13:7-23 (internal citations omitted).

disproportionate to the severity of the crime' nor involve as punishment, the 'wanton and unnecessary infliction of pain.'" *Id*. (quoting I, 452 U.S. at 347). A general limitation on the availability of jobs and educational opportunities within the prison context is not considered punishment. *Id*. Martin alleges that the various requirements that relate to his prison employment or educational programs constitute cruel and unusual punishment. Because general limitations placed on prison jobs by the state are not considered punishment, Martin's Eighth Amendment claim fails. *See Baumann*, 754 F.2d at 846.

The Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). "Whatever our hopes for the future, we cannot hold at present that the treatment described in the complaint constitutes cruel and unusual punishment." *Smith v. Schneckloth*, 414 F.2d 680, 682 (9th Cir. 1969).

          Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions for Summary Judgment (Doc. 99) is GRANTED;
2. The case is dismissed; and,
3. The trial date scheduled for October 28, 2008 is hereby VACATED.
4. The clerk is directed to enter judgment and close the case.

///

DATED: September 30, 2008

                                      /s/ Arthur L. Alarcón
                                      UNITED STATES CIRCUIT JUDGE
                                      Sitting by Designation